UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMIE R. GREEN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-656-JD-MGG |
| CORRECT CARE SOLUTIONS, et al., | |
| Defendants. | |

OPINION AND ORDER

Plaintiff Jamie R. Green is incarcerated and representing himself. He filed a complaint alleging that Defendants Dr. Fostor, Dr. Wendy, Correct Care Solutions, and Captain Bradley Roger did not provide appropriate medical care for his knee pain while he was detained at the Elkhart county jail. In addition, he's suing "Unknown Grievance Specialist" and "Unknown Nurses." "A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, because Mr. Mr. Green is incarcerated, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Id*.

Two weeks before being detained at the Elkhart County jail,[1] Mr. Green went to a hospital emergency room because his knee hurt. The ER doctor took x-rays, diagnosed him with "knee pain," prescribed Mobic,[2] and recommended that he follow-up with an orthopedic doctor "in 2-3 days or immediately if [his] symptoms get worse." (ECF 6-1, ER Chart at 5.)

Once in jail, Mr. Green informed the nurses and Drs. Fostor and Wendy that his knee continued to hurt and Mobic was not helping, but they continued to prescribe him the same medication. Mr. Green is also upset because Doctor Fostor ordered an ultrasound of the knee. He insists that, because Doctor Fostor had a copy of his x-ray images, Dr. Fostor should have known that an MRI, instead of an ultrasound, was needed. In fact, according to him, both doctors refused to order the MRI and refused to refer him to an orthopedic doctor because they wanted to save money for the jail and their employer, Correct Care Solutions. He therefore had to suffer pain for four months, from May 1 until August 30, 2018.

The Eighth Amendment applies to convicted persons, while the Fourteenth Amendment applies to pretrial detainees. The latter standard is less onerous. *See Mulvane v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions

---

[1] Although he does not say so explicitly, Mr. Green appears to have been housed at the jail as a pretrial detainee. He is now at the Wabash Valley Correctional Facility.

[2] Mobic (meloxicam) is a nonsteroidal anti-inflammatory drug used to treat pain or inflammation caused by rheumatoid arthritis and osteoarthritis in adults. https://www.drugs.com/mobic.html (last visited July 13, 2020).

2

that 'amount to punishment.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "A pretrial condition can amount to punishment in two ways: first, if it is 'imposed for the purpose of punishment,' or second, if the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment.'" *Id*. (quoting *Bell*, 441 U.S. at 538–39). "[I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Bell*, 441 U.S. at 561). The Seventh Circuit has held that "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*." *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

Mr. Green has stated a claim against Drs. Fostor and Wendy. To be clear, this is so not because he was ordered an ultrasound test instead of an MRI; rather, Mr. Green has stated a claim by alleging that the doctors continued to prescribe him Mobic for four months without exploring other avenues for relieving the pain or treating the condition, even though Mr. Green had informed them numerous times that this medication wasn't working.

Mr. Green further alleges that Drs. Fostor and Wendy retaliated against him for filing a grievance against them. He claims that they ordered him to be placed in the back of the medical housing twenty-four hours a day for observation. Mr. Green

complains that he never saw either of the doctors observe him: only a nurse would come by. This doesn't give rise to a claim of retaliation for filing grievances. "To prevail on a First Amendment retaliation claim, [plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Here, even when the allegations are construed in the light most favorable to Mr. Green, he hasn't stated that he suffered a deprivation that would likely deter First Amendment activity in the future.

He is also suing the "grievance specialist" for not addressing his grievances but such a claim is doomed to fail. "[T]he Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *see also Lee v. Kennedy*, No. 19-CV-1277, 2019 WL 5196372, at *1 (C.D. Ill. Oct. 15, 2019) ("Further, Plaintiff does not have a freestanding constitutional right to the investigation into another's alleged wrongful activity.") (citing *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015)).

Mr. Green next mentions in passing that, at some point, he was in the general population of the jail and was "jumped." He attributes the attack to the fact that he was in pain, but he gives no other information and does not suggest that any of the defendants should have known of any risk of him being placed in the general

4

population. Mr. Green cannot state a claim against the defendants by alleging what appears to have been a random attack against him. *See Jelinek v. Greer*, 90 F.3d 242, 245 (7th Cir. 1996) (no liability established in the absence of evidence that the attack was foreseeable and not random).

Next, Mr. Green says he complained to Cpt. Rogers about his attempts to get the medical treatment he wanted but Cpt. Rogers did not order Drs. Fostor and Wendy and the nurses to change the course of his medical treatment. These allegations fail to state a claim. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Furthermore, non-medical staff rely on medical experts and are "entitled to relegate to the prison's medical staff the provision of good medical care." *Id.* at 595. Cpt. Rogers was entitled to rely on the judgment of the medical staff at the prison to decide what specific treatment was appropriate for Mr. Green. *See Miranda*, 900 F.3d at 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention.")

Moreover, insofar as Mr. Green is suing Cpt. Rogers—and any other defendant for that matter—in his official capacity, that claim must be dismissed. Section 1983 claims against a person in his official capacity are limited to injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (federal court's remedial power in official

capacity suits under § 1983 limited to prospective injunctive relief). Yet Mr. Green is not asking for injunctive relief; in fact, he's no longer at the Elkhart County jail.[3]

As for the unknown nurses, Mr. Green believes them to be liable because they, too, failed to give him the correct medication and failed to order an MRI or send him to an orthopedic doctor. However, the nurses do not have authority to order MRIs or send an inmate to an outside doctor. Moreover, the nurses can rely on the doctors' prescribed course of treatment, unless such treatment is outright harmful to the patient and a nurse would know that. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."). Here, Mr. Green's allegations are too scant to imply any liability to the nurses at the Elkhart County jail.

Finally, according to Mr. Green, Defendant Correct Care Solutions is liable to him because it employed the doctors who were deliberately indifferent to his medical needs. "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012)). However, "[a] municipality may not be held liable under § 1983

---

[3] Suing persons in their official capacities is a different way of saying that a governmental entity is being sued. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.") (citation omitted).

based on a theory of respondeat superior or vicarious liability." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Because Mr. Green's complaint only describes the actions—or inaction—of the medical staff in connection with his treatment, he has not implicated Correct Care Solutions.

For these reasons, the Court:

(1) GRANTS Jamie R. Green leave to proceed on a claim for money damages against Dr. Fostor and Dr. Wendy, in their individual capacities, for allegedly violating his rights under the Fourteenth Amendment continuing to prescribe him Mobic from May 1 until August 30, 2018, without exploring other avenues for relieving his pain or treating his medical condition, even though Mr. Green had informed them numerous times that this medication wasn't working;

(2) DISMISSES defendants Correct Care Solutions, Captain Bradley Rogers, Unknown Grievance Specialist, Unknown Nurses;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Dr. Foster and Dr. Wendy with a copy of this order and the amended complaint (ECF 6), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. Foster and Dr. Wendy to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Mr. Green has been granted leave to proceed in this screening order.

SO ORDERED on July 15, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT